UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:09-cr-111 (AWT) |
| | : | |
| v. | : | |
| | : | |
| AARON THOMPSON | : | June 4, 2019 |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR
IMMEDIATE RELEASE OR RESENTENCING UNDER THE FIRST STEP ACT**

The defendant, Aaron Thompson, has moved this Court to order his immediate release, or

in the alternative, to schedule a resentencing hearing, pursuant to the First Step Act of 2018 ("FSA

2018"), Pub. L. 115-391, 132 Stat. 5194 (2018), § 404. Mr. Thompson has served approximately

120 months of the 168-month sentence he received after pleading guilty to conspiracy to possess

with intent to distribute, and to distribute, 50 grams or more of cocaine base in violation of 21

U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii). The Bureau of Prisons currently calculates Mr.

Thompson's release date to be August 28, 2020.

The United States Probation Office's ("USPO") addendum to Mr. Thompson's

Presentence Report concludes that the Court has discretion to reduce Mr. Thompson's sentence

but that it is not required to do so.  PSR Add. at 5 [ECF No. 794].   Ultimately, however, the USPO

does not recommend a reduction in Mr. Thompson's custodial sentence, only in his term of

supervised release. While the government agrees that a reduction in the custodial sentence is

inappropriate, it respectfully disagrees with the USPO's assessments that (1) he is eligible for

relief, and (2) his supervised release term should be reduced.  Accordingly, the government urges

the Court to deny Mr. Thompson's motion. Mr. Thompson's underlying violation is not a "covered

offense" under the FSA 2018 because the statutory penalties for the violation remain the same

even if the Fair Sentencing Act of 2010 had been in effect at the time of sentencing. Thus, the defendant is ineligible for relief under the FSA 2018, and the Court should deny the defendant's motion.

## I.   <u>BACKGROUND</u>

On November 10, 2009, Mr. Thompson pleaded guilty to count one of an eight-count indictment, which charged him with conspiracy to possess with intent to distribute, and to distribute, 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii).  Change of Plea Hearing Transcript dated November 10, 2009 at 35 [ECF No. 682].

In connection with the guilty plea, the parties entered into a binding plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  The plea agreement included an agreement by both parties that a sentence of 168 months of incarceration was appropriate, as well as a promise that the government would not file a second offender notice under 21 U.S.C. § 851, which would have increased the mandatory minimum term of imprisonment from ten years to twenty years and resulted in a Guidelines range of 360 months to life of imprisonment.  While the plea agreement did not include an express stipulation of drug quantity, it did indicate that, for purposes of a Guidelines calculation, the parties agreed to a drug type and quantity of narcotics of at least 4.5 kilograms of cocaine base.[1]  Plea Agreement at 5 [ECF No. 171].

---

[1] During the plea colloquy, the Court noted that for purposes of a Guidelines calculation, the parties agreed that 4.5 kilograms of cocaine base would be attributed to Mr. Thompson.  Mr. Thompson disagreed with that figure, but acknowledged that the sentence of 168 months was reasonable, and that he had read the plea agreement, which included the 4.5 kilogram figure, and understood the benefits of his bargain.  Plea Transcript dated November 10, 2009 at 10-14 [ECF No. 682].  Later on in the proceeding, the defendant and his attorney signed the plea agreement. *Id.* at 22.

The Court sentenced Mr. Thompson on June 10, 2010 to 168 months of imprisonment, in accordance with the plea agreement, followed by five years of supervised release. Sentencing Transcript dated June 10, 2010 at 10 [ECF No. 683].

## II.    ARGUMENT

###    A.    The Court should consider the 4.5 kilogram drug quantity attributed to the defendant and conclude that Count One is not a "covered offense" within the meaning of the First Step Act

Under Section 404 of the First Step Act, the Court may impose a reduced sentence on a "covered offense" as if Sections 2 and 3 of the Fair Sentencing Act had been in effect at the time the offense was committed. In relevant part, Section 404 reads as follows:

> (a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

> (b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

The First Step Act defines a "covered offense" as a "*violation* of a Federal criminal statute, the statutory penalties for which were modified" by the Fair Sentencing Act. (Emphasis added). The threshold question for a court facing a First Step Act motion, therefore, is to determine what "violation" the defendant committed. According to Section 404(b), the purpose of the First Step Act is to allow a Court to consider imposing a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect *at the time the covered offense was committed.*" (Emphasis added). In other words, the Court's task is, essentially, to go back in time and determine whether the defendant would have faced different statutory penalties for his

"violation," if sections 2 and 3 of the Fair Sentencing Act had been in place at the time of the crime.

The parties join issue on how to determine what is the "violation . . . that was committed before August 3, 2010," in the words of Section 404 of the First Step Act. The defendant argues that the term "violation" refers narrowly to the statute cited in the charging document – here, the then-applicable language of 21 U.S.C. § 841(b)(1)(B) that the defendant possessed "5 grams or more of cocaine base." By contrast, the Government contends that the term "violation" refers more broadly to the actual offense conduct, to the extent that can be discerned from the record – for example, as found by a jury after trial, admitted by a defendant during a guilty plea, or as established in factual findings by the court at sentencing. At present, no Court of Appeals has yet had occasion to consider this question, and so there is no binding precedent one way or the other. The few district courts to consider the issue across the country are divided, with some decisions adopting the government's view,[2] and a presently greater number of decisions tilting in favor of the defense's view.[3] Recognizing that these decisions, one way or the other, are merely persuasive authority, the Government offers these observations for the Court's consideration.

---

[2] *See, e.g., United States v. Glover*, 2019 WL 1562833, at *7–*10 (S.D. Fla. Apr. 11, 2019); *United States v. Haynes*, 2019 WL 1430125, at *2 (D. Neb. Mar. 29, 2019); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019).

[3] *See, e.g., United States v. Simons*, 2019 WL 1760840, at *6 (E.D.N.Y. Apr. 22, 2019); *United States v. Martin*, 2019 WL 1558817, at *3 (E.D.N.Y. Apr. 10, 2019); *United States v. Dodd*, 2019 WL 1529516, at *2–*3 (S.D. Iowa Apr. 9, 2019); *United States v. Pierre*, 2019 WL 1495123, at *5 (D.R.I. Apr. 5, 2019); *United States v. Pugh*, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019); *United States v. Powell*, 2019 WL 1198005, at *4 (N.D.N.Y. Mar. 14, 2019); *United States v. Davis*, 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019); *United States v. Glore*, 2019 WL 1060838, at *6 (E.D. Wis. Mar. 6, 2019); *United States v. Laguerre*, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019).
At the time of this writing, the Government is aware of only one ruling in the District of Connecticut on this issue; that decision adopted the defense's proffered interpretation of the First Step Act. *See United States v. Michael Allen*, 2019 WL 1877072 (D. Conn. Apr. 26, 2019)

1.    **A textual analysis of Section 404(a) favors interpreting the term "violation" to refer to offense conduct rather than limiting it to the statutory language of § 841(b)(1)(B).**

First, Section 404(a) defines a covered offense as a "violation . . . *that was committed before August 3, 2010.*" (Emphasis added). This temporal reference makes it clear that Section 404(a) is referring to something that the defendant actually did – in the words of the statute, "committed" – at a certain point in time. By tethering Section 404(a) to real-world conduct by a defendant at a specific moment in time, this language suggests that Congress meant a "violation" to refer to what the defendant *actually did*, not merely a *legal characterization* of what the defendant did.

Second, a focus on the defendant's actual conduct or violation – as opposed to the statute at issue – makes more grammatical sense, and avoids rendering part of Section 404(b) superfluous. Section 404(a) defines a "covered offense" as a "violation of a Federal criminal statute, *the statutory penalties for which were modified* . . . ." (Emphasis added). Under the most natural reading of this sentence, the phrase "the statutory penalties for which were modified" must modify the critical definitional word "violation" (the direct object of the sentence), not the prepositional phrase "of a Federal criminal statute" (which itself modifies the direct object). Indeed, it would make no sense for Congress to describe a "*statute*" as having had its "*statutory penalties*" modified, because that would render the word "statutory" redundant. It is a canon of statutory interpretation that "[a] statute should be constructed so that effect is given to all of its

_____

(Chatigny, J.). In two oral decisions, Judge Hall has followed *Allen*. *United States v. McCoy*, Nos. 3:04-CR-336 (JCH) and 3:06-CR-100 (JCH), (ECF#s 629 and 118, respectively, May 3, 2019), and *United States v. Leon*, No. 3:93-CR-199 (JCH), (ECF# 587, May 20, 2019). As discussed below, however, *Allen* involved a case where the parties had disputed the quantity of drugs involved in the offense, and Judge Chatigny had made factual findings about the disputed drug quantities at sentencing. *Allen* did not have occasion to consider whether a drug quantity involved in a plea agreement – much less a binding plea agreement – should alter the analysis.

provisions, so that no part will be inoperative or superfluous, void or insignificant." *Marx v. General Revenue Corp.*, 568 U.S. 371, 393-94 (2013) (internal quotation marks omitted); *see also United States v. Menasche,* 348 U.S. 528, 538–539 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute' " (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883))). And if it is the "violation," rather than the "Federal criminal statute" which the Court must examine to determine whether the "statutory penalties" have changed, the Court is therefore required to look at something more than simply what the charged statute says.

Indeed, a charging document alone cannot always inform a reviewing court of what "violation" was involved in a case. For example, a count in an indictment might cite 21 U.S.C. § 841(b)(1)(A), but the defendant might plead guilty to a lesser-included offense covered by § 841(b)(1)(B) because the offense involved a smaller quantity of drugs than originally thought. To discern the violation at issue, the court would be required to look at additional documents such as the plea transcript and plea agreement, to determine what the defendant admitted. A judgment of conviction alone will not always shed fulsome light on the "violation" either, even under the defense's view – for example, for a defendant who was convicted and sentenced before the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the judgment might have referenced only 21 U.S.C. § 841(a), and not the penalty provisions of § 841(b)(1). In short, Section 404(a) of the First Step Act becomes unworkable if its definition of "violation" is limited exclusively to the text of the statute at issue.

2.   **The doctrine of constitutional avoidance does not counsel cabining the interpretation of a "violation" to the statutory language of § 841(b)(1)(A).**

The Government also notes that the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), do not mandate (or even counsel) a narrow interpretation of the term "violation." The First Step Act creates only

a limited mechanism to consider *reducing* a sentence. *Apprendi* and *Alleyne*, by contrast, stand for the propositions that the Sixth Amendment prohibits *increasing* a defendant's sentence based on facts found by a judge alone, whether by increasing the statutory maximum penalty (*Apprendi*) or the statutory minimum penalty (*Alleyne*). Congress provided in Section 404(c) of the First Step Act that "[n]othing in this section shall be construed to *require* a court to reduce any sentence pursuant to this section." (Emphasis added). That provision could hardly be permissible if *Apprendi* and *Alleyne* applied. *See Dillon v. United States,* 560 U.S. 817 (2010) (holding that a court need not apply *Booker v. United States,* 543 U.S. 220 (2005), which rendered the Guidelines advisory, to remedy a violation of *Apprendi* where the court is considering only whether to reduce a sentence based on a retroactive guideline amendment); *United States v. Potts*, 2019 WL 1059837, at *2 (S.D. Fla. Mar. 6, 2019) (noting that *Alleyne v. United States*, 570 U.S. 99 (2013) does not apply to the quantity determination); *United States v. Glover*, 2019 WL 1562833, at *7–*10 (S.D. Fla. Apr. 11, 2019) (noting that a defendant "is not entitled to the application of the rule announced in *Apprendi* because the Court lacks jurisdiction to consider a constitutional challenge to a sentence in a Section 3582(c) proceeding").[4]

    Moreover, even if *Apprendi* and *Alleyne* somehow extended to sentence-reduction motions (which they do not), there would be no Sixth Amendment problem with considering the

---

[4] In a similar context, in assessing eligibility for a reduced sentence under 18 U.S.C. § 3582(c)(2) based on a retroactive guideline amendment, courts may deny relief upon concluding that the offense involved a drug quantity supporting the same offense level both before and after the amendment.  *See United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014); *see also, e.g., United States v. Peters*, 843 F.3d 572, 578 (4th Cir. 2016); *United States v. Valentine*, 694 F.3d 665, 670 (6th Cir. 2012); *United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013); *United States v. Mercado-Moreno*, 869 F.3d 942, 953–55 (9th Cir. 2017); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013); *United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013); *United States v. Wyche,* 741 F.3d 1284, 1293 (D.C. Cir. 2014).

4.5 kg quantity of crack cocaine set forth in the defendant's binding plea agreement (not merely found by the court at sentencing).[5] Indeed, the quantity listed in the plea agreement was an under-estimate. As set forth in the PSR, the calculation of quantity in Mr. Thompson's case was based upon the evidence of defendant's drug conspiracy, which involved the defendant and his co-conspirators purchasing powder cocaine and converting it to crack cocaine for distribution over the course of two years.  The PSR notes that "[a] conservative estimate of the amount of cocaine attributable to the defendant is 200 grams of cocaine per week for two years," which amounts to 20.8 kilograms of powder cocaine over the course of the conspiracy. PSR at 11-12 [ECF No. 794-2].  Translating that amount to crack cocaine, again assuming conservatively that only one fourth of each kilogram of cocaine was converted to crack, the PSR concludes that "the threshold of 4.5 kilograms of cocaine base is easily met" and results in a total crack quantity of 5.2 kilograms.  *Id.* at 12.  The defendant did not file any objections to the presentence report, and the Court accepted the entirety of the PSR's conclusions in its Statement of Reasons.

In short, the defendant accepted a binding plea agreement that provided that he knowingly conspired to possess with intent to distribute, and to distribute, 4.5 kilograms of crack cocaine. The "statutory penalties" for that "violation" were not "modified" by sections 2 and 3 of the Fair Sentencing Act. Accordingly, he was not sentenced for a "covered offense," and should not be deemed eligible for consideration of a reduced sentence under Section 404 of the First Step Act.

---

[5] As noted above, Judge Chatigny recently held that eligibility under the First Step Act should be measured by considering only the language of the statute that the defendant violated. *See Allen,* 2019 WL 1877072 at *3. The Government respectfully disagrees with the analysis of *Allen*. In any event, the Government submits that the reasoning of *Allen* does not account for cases, like the present one, where the defendant admitted to a specific drug quantity as part of his plea agreement. For the reasons outlined in the text above, the Sixth Amendment does not counsel in favor of an interpretation of the First Step Act that ignores the defendant's admissions.

A.     **The Court should not exercise its discretion to reduce Mr. Thompson's term of imprisonment under the FSA 2018**

Even if the Court finds that Mr. Thompson's conviction is eligible for consideration under the FSA 2018, the Court should *not* exercise its discretion to reduce his sentence. As an initial matter, Mr. Thompson is not entitled to a plenary resentencing. Moreover, reducing his sentence under the FSA 2018 would create an inequitable result that would violate important goals of sentencing set forth in 18 U.S.C. § 3553(a).

### 1. The First Step Act does not require a plenary resentencing.

A plenary sentencing is not required. The authority of a district court to modify a prison sentence is narrowly limited by 18 U.S.C. § 3582(c), and a "court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). Section 404(b) of the First Step Act expressly permits a limited exception, providing that the court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." This provision does not authorize a plenary resentencing. Rather, it makes only two sections of the Fair Sentencing Act retroactive: Section 2 (changing the threshold quantities triggering different statutory penalties under 21 U.S.C. §§ 841(b)(1) and 960(b)) and Section 3 (eliminating the provision in 21 U.S.C. § 844(a) that had imposed a five-year statutory minimum sentence for possession of 5 grams or more of cocaine base). Thus, Section 404(b) of the First Step Act's text, together with its limited scope, evidences that Congress intended to authorize only a limited adjustment to an otherwise final sentence.

Despite the First Step Act's recent vintage, the weight of authority falls decidedly in favor of this interpretation. In *United States v. Potts*, for example, the district court recognized that the

procedural vehicle for effectuating a sentencing reduction under the First Step Act is provided by 18 U.S.C. § 3582(c), which recognizes limited exceptions to the rule of finality with respect to criminal sentences. *United States v. Potts*, No. 2:98-CR-14010-Rosenberg, 2019 WL 1059837, at *2-3 (S.D. Fla. Mar. 6, 2019). Section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except" in enumerated circumstances, including (according to § 3582(c)(1)(B)) "to the extent otherwise expressly permitted by statute" or Rule 35. *Id.*. As the *Potts* court explained, longstanding authority provides that a "defendant is not entitled to a full resentencing during a § 3582(c) proceeding." *Id.* at 2 (internal quotation marks omitted). Even though the cases cited by *Potts* arose in the context of § 3582(c)(2) (which authorizes imposition of a reduced sentence when the Sentencing Commission adopts a retroactively applicable Guideline amendment), its observation was made with respect to § 3582(c) more generally. Neither the Fair Sentencing Act nor the First Step Act changes that, because neither of those statutes "expressly" permits such a plenary proceeding, as would be required by § 3582(c)(1)(B).

Indeed, the majority of decisions conclude that a defendant is not entitled to full resentencing under the First Step Act. *See, e.g., United States v. McKinney*, 2019 WL 2053998, at *4 (D. Kan. May 9, 2019) ([The defendant] "is not entitled to a full resentencing under the First Step Act."); *United States v. Lawson*, 2019 WL 1959490, at *2 (N.D. Ohio May 2, 2019) ("[N]othing in the First Step Act anticipates a full re-sentencing with application of laws and guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act."); *United States v. Rivas*, 2019 WL 1746392, at *8 (E.D. Wis. Apr. 18, 2019) (the First Step Act does not authorize plenary resentencing, including consideration of the determination that the defendant

was a career offender); *United States v. Russo*, 2019 WL 1277507, at *1 (D. Neb. Mar. 20, 2019) ("[T]he Court cannot conclude that the First Step Act anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing, other than the retroactive application of the reduced penalties for crack cocaine set out in the Fair Sentencing Act. If the Court were to engage in such a re-sentencing, applying other laws and Guidelines that have been changed since Russo's original sentencing, it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010."); *United States v. Glore*, 2019 WL 1761581, at *4-5 (E.D. Wis. Apr. 22, 2019) ("The First Step Act does not 'expressly permit' the court to conduct a plenary resentencing. It does not authorize the court to disturb Judge Clevert's conclusion that the defendant qualified as a career offender, or to modify the eighteen-month consecutive sentence Judge Clevert imposed in Case No. 94-cr-102. It authorizes the court to do one thing—recalculate the sentence Judge Clevert imposed in the 1999 case as if section 2(a) of the FSA had been in effect when the defendant committed that crime."); *see also United States v. Davis*, No. 07-cr-245S(1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) ("Nowhere does the Act expressly permit the type of plenary resentencing or sentencing anew that Davis advocates."); *United States v. Sampson*, No. 00-CR-6083L, 2019 WL 1141528, at *2 (W.D.N.Y. Mar. 13, 2019) (agreeing with the reasoning of Davis that "that a full resentencing is neither required nor called for").

The defense argues that because Section 404(b) uses the term "impose" both when referring to the court which may grant a sentencing reduction ("A court that imposed a sentence") and to the authority of the court in reducing the sentence ("impose a reduced sentence"), Congress must also have meant that the procedures to be followed in a sentence reduction proceeding must also

11

be identical to the procedures to be followed at the original sentencing hearing – namely, that both entail plenary sentencings. But this argument vests the word "impose" with far more meaning than it can bear.

The word impose, used as a transitive verb, means "to establish or apply by authority." "Impose," Merriam-Webster Online Dictionary (2019), http://www.merriam-webster.com (last visited 31 May 2019). In other words, the term "impose" denotes only the establishment or application of a sentence, which is the end point of a particular proceeding. It does not implicate what, if any, procedures must be followed in order to decide what sentence ought to be applied. This interpretation is further supported by the context in which the word "impose" is used. Section 404(b) of the First Step Act authorizes a court only to "impose a reduced sentence," which fits within the statutory provision of 18 U.S.C. § 3582(c)(1)(B), authorizing a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ." In short, use of the generic word "impose" in Section 404(b) signifies nothing more than a court's authority to substitute a previous sentence with a new sentence; that word alone does not shed any light on the scope or procedures to be employed in deciding whether to make such a substitution. *See Potts*, 2019 WL 1059837, at *2-3.

1. **Granting Mr. Thompson's motion for immediate release or a plenary resentencing would undermine the goals of sentencing and lead to irrational sentencing disparities**

Additionally, the Court should not exercise its discretion to grant the requested action to avoid unwarranted sentence disparities among similarly situated offenders. A plenary resentencing, with complete recalculation of the guidelines in light of current law – would undermine the sentencing goals of uniformity and proportionality, leading to divergent and unjustifiable sentences among similarly situated offenders. The most notable potential disparity

flowing from Mr. Thompson's motion is that, under his interpretation of the FSA 2018, crack cocaine offenders originally sentenced before the Fair Sentencing Act would be treated differently (and more favorably) than every other recidivist subject to Sections 841(b)(1)(A) or (B) who was sentenced in the approximately eight years after the Fair Sentencing Act was passed but before the enactment of the First Step Act. That is because the former group would now be entitled to reconsideration of their sentences in light of any developments in the case law and non-retroactive guidelines amendments, whereas the latter group would not. Indeed, the latter group – whose sentence reductions between 2010 and 2018 have been governed by § 3582(c)(2) – have been explicitly prohibited from receiving sentence reductions below their newly applicable guideline range, based solely on adjustments to the quantity tables in U.S.S.G. § 2D1.1. Granting Mr. Thompson's motion "would seriously undermine basic Federal Sentencing Guidelines objectives such as uniformity and proportionality in sentencing" and "would (in respect to relevant groups of drug offenders) produce sentences less uniform and more disproportionate than if Congress had not enacted the Fair Sentencing Act [or the First Step Act] at all." *Dorsey v. United States*, 567 U.S. 260, 264 (2012) (holding that Congress must have intended lower statutory ranges for crack cocaine offenses in the Fair Sentencing Act to apply in cases where the offenses were committed pre-enactment, but sentence occurred post-enactment). To the contrary, the purpose of the FSA 2018 is to ensure that the two groups receive similar, not disparate, treatment.

### 2. A further reduction of Mr. Thompson's below-guidelines sentence is unwarranted.

As an initial matter, the government acknowledges – and even applauds – Mr. Thompson's many achievements during his incarceration, which are outlined in his memorandum and in the PSR Addendum.  Indeed, with the exception of two disciplinary tickets, Mr. Thompson appears to have taken advantage of the educational and rehabilitative programs

13

available in the federal prison system to prepare himself for a law-abiding, productive life after release.

Even in light of that, however, the government urges the Court to deny Mr. Thompson relief because he already received the significant benefit of a guaranteed below-Guidelines sentence by virtue of the binding plea agreement.  Thus, although Mr. Thompson's entrance into a binding plea agreement does not preclude him from seeking relief under the FSA 2018, it is a factor that should weigh heavily against a sentence reduction.  In the amended PSR, the USPO aptly opines that, "[b]ecause Mr. Thompson agreed within the plea agreement that 168 months' imprisonment was the appropriate sentence 'regardless of the applicable guideline range in this case,' and because a sentence of 168 months' imprisonment is already well below the bottom of the amended range whether considering powder or crack cocaine, the probation officer does not recommend any further decrease in his custodial sentence." PSR Add. at 5 [ECF No. 794].  The Court should accept the USPO's recommendation on this point.  A custodial sentence of 168 months is exactly what Mr. Thompson bargained for, a deal that afforded him a great benefit in the face of (1) the potential filing a second offender information, (2) a four-level role enhancement pursuant to U.S.S.G. § 3B1.1(a), and (3) a Guidelines range of 360 months – life. At the time of sentencing, then- U.S. District Judge Peter C. Dorsey found that,

> at the agreed sentence of 168 months, as the parties have stipulated, that a disposition on that basis of the case is fair, is reasonable, does comply with the appropriate consideration of the guidelines range as calculated.  It also meets the requirements of [18 U.S.C. §] 3553(a).  So, on that basis, I find that the sentence is reasonably sufficient to accomplish those purposes and is an appropriate disposition of the case, having in mind the factual situation that's – that is presented as far as Mr. Thompson's conduct is concerned.

Sentencing Transcript dated June 10, 2010 at 8 [ECF No. 683].  As 168 months is still well below the bottom of the new Guidelines calculation (for crack *and* powder cocaine), and still

satisfies the requirements of 18 U.S.C. § 3553(a), there is no reason why Judge Dorsey's reasoning should not still apply.

In sum, by agreeing to plead guilty under Rule 11(c)(1)(C), Mr. Thompson avoided tremendous sentencing guidelines exposure. In order to avoid a trial, the government accepted a sentence that was well below the bottom of the Guidelines range, and forwent the filing of a second offender information. In order to avoid the risk of being convicted at trial, a second offender enhancement, and exposure to a Guidelines range of 360 months to life, Mr. Thompson negotiated for and received a 168-month sentence. All told, the parties received the benefits of their bargain. Nothing has changed that should upset this bargain, and the Court should exercise its discretion to decline to reduce his sentence.

Moreover, the government urges the Court to reject Mr. Thompson's suggestion that it apply a "proportional approach" to a sentence reduction.  Def.'s Mem. at 16.  Citing *United States v. Johnson*, No. 7:08-CR-0024, 2019 WL 1186857 (W.D. Va. Mar. 12, 2019), the defendant reasons that because the 168-month sentence he received was 46% of 360 months – the bottom of the Guidelines range at the time of sentencing—he should now be resentenced to a figure equal to 46% of 292 months – the bottom of the *new* Guidelines range.  By his calculation, that would reduce his current sentence to 134 months and, "[b]ecause Mr. Thompson has completed RDAP and earned good time credit, he has only 15 months left to serve on his sentence (including halfway house time)," he would be eligible for immediate release.  Def.'s Mem. at 16.

Mr. Thompson's reliance on *Johnson* is misplaced for two reasons.[6]

---

[6] The Government notes that in *Johnson*, the parties agreed that the defendant had been sentenced for an eligible offense.  Here, by contrast, that point is in dispute.

First, even if the Court determines that the count of conviction is a "covered offense," applying a formulaic approach in the context of the FSA 2018 is inconsistent with the well-established principles of sentencing set forth in 18 U.S.C. § 3553.  The sentencing factors provide a framework within which a sentencing court, considering all relevant facts and circumstances, can arrive at a figure that reflects the competing concerns of the government, the defendant, and society.  In other words, the sentencing factors require that courts assess each defendant's conduct on an individualized basis.  Here, the 168-month figure was negotiated for and accepted by those in the best position to determine its appropriateness based upon all the relevant considerations unique to the defendant and his conduct.  It should remain undisturbed.

Second, Mr. Thompson alleges that, with RDAP and good time credit, a reduced sentence of 134 months would make him eligible for immediate release. Def.'s Mem. at 16.  The calculation of good time credit is a matter for the Bureau of Prisons, not the court.  *See United States v. Wilson,* 503 U.S. 329, 332.  Even if this Court determines in its discretion that a reduced sentence of 134 months is appropriate, the question of whether the defendant's RDAP and good time credit entitles him to immediate release should be left to the Bureau of Prisons.

The Court should also consider that the Government negotiated in good faith for the binding plea agreement in this case, and should be afforded the benefit of the bargain. The Government acknowledges that – assuming the defendant was convicted of a covered offense – the binding plea agreement would not remove the Court's authority to reduce the sentence, and that factor should nevertheless weigh heavily in the Court's discretion.  The Government may understandably be more hesitant in the future to forego various sentencing enhancements and enter into binding plea agreements, if a defendant may in the future unilaterally seek a sentence reduction beyond what the Government agreed to in a binding plea agreement.

### 3.      A hearing is unnecessary and unwarranted

Finally, the Court is not required to hold a hearing to consider a sentencing reduction motion under Section 404 of the First Step Act, and the government submits that a hearing is unnecessary here.  The reduction is authorized by 18 U.S.C. § 3582(c)(1)(B), which states: "The court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Here, the First Step Act is the statute that triggers § 3582(c)(1)(B). Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)."  In *Dillon v. United States*, the Supreme Court confirmed that sentencing reduction proceedings stand "as a narrow exception to the rule of finality" and accordingly Rule 43, which "requires that a defendant be present at 'sentencing,' see Rule 43(a)(3), . . . excludes from that requirement proceedings that 'involv[e] the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c),' Rule 43(b)(4)." 560 U.S. 817, 827-28 (2010).

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny Mr. Thompson's motion for a sentencing reduction without holding a hearing on the matter. The government defers to the Court regarding any reduction of Mr. Thompson's term of supervised release.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Maria del Pilar Gonzalez*
MARIA DEL PILAR GONZALEZ
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct30716
157 Church Street, Floor 25
New Haven, CT 06510
203-821-3700

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2019, a copy of the foregoing Response was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

<u>/s/ <i>Maria del Pilar Gonzalez</i></u><br>
MARIA DEL PILAR GONZALEZ<br>
ASSISTANT U.S. ATTORNEY