UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CRIMINAL NO. 3:09-CR-111 (AWT) |
| AARON THOMPSON | : | June 18, 2019 |

**REPLY MEMORANDUM IN SUPPORT OF FIRST STEP ACT MOTION**

Mr. Aaron Thompson respectfully submits this reply memorandum in further support of his filings under the First Step Act of 2018 to address certain points in the government's June 4, 2019 response (ECF No. 796).  In limiting his reply to these points, Mr. Thompson does not waive any argument previously raised.  The issues in this case are fully joined and await decision by the Court.

The government argues (1) that Mr. Thompson is not eligible for relief under the First Step Act, based on the drug quantity found by the Court at sentencing by a preponderance of the evidence, and (2) that even if Mr. Thompson is eligible for relief, the Court should refuse to exercise its discretion to grant him relief.  In fact, the government suggests that the Court should not even grant Mr. Thompson a hearing.  We strongly disagree with the government.  For the reasons explained below, Mr. Thompson is plainly eligible for relief under the First Step Act.  He is also precisely the type of person whom the First Step Act was intended to benefit, and he is someone who is deserving of discretionary relief.  Accordingly, the Court should exercise its discretion to order Mr. Thompson's immediate release and to lower his term of supervised release from 5 to 4 years.

I.       An uncharged, judge-found drug quantity cannot bar relief under the First Step Act.

Mr. Thompson is eligible for relief under the plain language of the First Step Act.  The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018).  Mr. Thompson pleaded guilty to one count of possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A).  As explained in Mr. Thompson's initial memorandum, this is a covered offense, because the statutory penalties for 841(b)(1)(A) were modified by section 2 or 3 of the Fair Sentencing Act.  Today, the statutory penalties for Mr. Thompson's conviction would fall under 21 U.S.C. § 841(b)(1)(B).

Nonetheless, the government asks the Court to use the greater—and uncharged—drug quantity of cocaine base contained in the PSR and adopted by the Court at sentencing to determine Mr. Thompson's statutory penalty range under the Fair Sentencing Act (and thus, his eligibility for relief under the First Step Act).  Based on the quantity found at sentencing, the government contends, the statutory penalties for Mr. Thompson's "violation" were not modified by sections 2 and 3 of the Fair Sentencing Act. The government is wrong, both as a matter of constitutional law and statutory interpretation.

The Supreme Court has long held that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed [are] by definition 'elements' of a separate legal offense," and "must be submitted to a jury, and proved beyond a reasonable doubt."  Apprendi v. New Jersey, 530 U.S. 466, 483 n.10, 490 (2000).  "The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime.  It must, therefore, be submitted to the jury and found beyond a reasonable doubt."

Alleyne v. United States, 570 U.S. 99, 115–16 (2013).  See also Mathis v. United States, 136 S. Ct. 2243, 2252 (2016) ("This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."); Burrage v. United States, 571 U.S. 204, 210 & n.3 (2014) (applying the rule to facts that increase the penalty range for an offense under 21 U.S.C. § 841(a)(1)).

Mr. Thompson was not charged with an offense involving 4.5 kilograms of crack cocaine, and no jury found that he committed an offense involving that quantity.  As a growing number of district courts around the country have held, "the drug type and quantity used to set the statutory range under the First Step Act of 2018 is the quantity charged in the indictment and found by a jury beyond a reasonable doubt."  United States v. Powell, No. 5:02-CR-206, 2019 WL 1198005, at *4 (N.D.N.Y. Mar. 14, 2019).

The Honorable Robert N. Chatigny in our District recently reached the same conclusion in United States v. Allen, rejecting the same arguments that are made by the government in this case, and holding that "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."  No. 3:96-CR-149 (RNC), 2019 WL 1877072 (D. Conn. Apr. 26, 2019) (quoting United States v. Martin, No. 03-CR-795 (BMC), 2019 WL 1558817 (E.D.N.Y. Apr. 10, 2019), vacated on other grounds, 2019 WL 2296051 (E.D.N.Y. Apr. 22, 2019)).  In Allen, the parties took the same positions on this issue as in this case.  Judge Chatigny agreed with the defendant:

> I agree with the defendant's interpretation of section 404.  "Under the plain language of [this section], whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated."  United States v. Davis, No. 07-CR-245S, 2019 WL 1054554, *3 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2d Cir. Apr. 5, 2019).  Mr. Allen pleaded guilty to violating a statute applicable to an offense involving 50 grams or more of crack cocaine.  The statutory penalty for this offense was modified by the Fair Sentencing Act. As a growing number of courts have concluded, "it is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."  United States v. Martin, No. 03-CR-795, 2019 WL 1558817, at *3 (E.D.N.Y. Apr. 10, 2019) (quoting Davis, 2019 WL 104554, at *2).

3

Allen, 2019 WL 1877072, at *3.

Judge Chatigny rejected the government's argument that a "violation" refers to the facts found by a court rather than the amount charged in the indictment:

> The government suggests that the term "violation" in the definition of "covered offense" creates an intrinsic ambiguity because it can be further construed to refer to the facts of the defendant's "violation" as found by the Court.  To the extent the statutory text is ambiguous, the ambiguity is dispelled by considering the purpose underlying the First Step Act.  Both parties agree that no legislative history is available to document the purpose of section 404. It is undisputed, however, that Congress wanted to further the Fair Sentencing Act's objective of mitigating the effects of a sentencing scheme that had a racially disparate impact.  See Dorsey, 567 U.S. at 268.  Given this remedial purpose, the First Step Act should be construed to provide courts with discretion to reduce a sentence when the statute the defendant violated has been modified by the Fair Sentencing Act to provide less severe penalties.  E.g., Noel v. N.Y.C. Taxi & Limousine Comm'n, 687 F.3d 63, 68 (2d Cir. 2012).  This interpretation of the statute is in keeping with the rule of lenity.  See Pierre, 2019 WL 1495123, at *5 (applying rule of lenity to Section 404); see also United States v. Simpson, 319 F.3d 81, 86 (2d Cir. 2002) ("[T]he rule of lenity is generally applicable to the Sentencing Guidelines as well as criminal statutes."); United States v. Fields, 113 F.3d 313, 325 (2d Cir. 1997) ("Simply put, the rule of lenity requires a sentencing court    -- when faced with an actual ambiguity over which of two penalties should apply -- to select the lesser penalty.").

Id.

In recent weeks, other decisions have followed the reasoning in the Allen decision and repeatedly rejected the same arguments that the government now raises in this case.  See United States v. Leon, No. 3:93-CR-199 (JCH), ECF No. 587 (D. Conn. May 20, 2019); United States v. Marte, 3:08-CR-4 (JCH) (May 7, 2019) (oral ruling in open court); United States v. McCoy, No. 3:04-CR-336 (JCH), ECF No. 629 (D. Conn. May 3, 2019); United States v. McCoy, No. 3:06-CR-100 (JCH), ECF No. 118 (D. Conn. May 3, 2019).  In addition, in Mr. Thompson's case, the Probation Office has determined that Mr. Thompson is eligible for immediate release under the First Step Act.

More, concerns about relying on the drug quantity used for sentencing—but not statutory conviction—purposes are particularly acute in this case. Here, at sentencing the Defendant objected

to the PSR's factual determination of drug quantity. *See* Document 473 at 2 (referencing objection letter to Probation). Judge Dorsey, at sentencing, in turn declined to resolve Defendant's objection to the Guidelines range on the ground that it would not affect the sentence imposed. He explained, "even if there were some significant affect, as far as the guideline calculation is concerned, in any of the matters that you have raised, it isn't going to affect the end result here anyway. So I've decided not to modify the Presentence Report in reaction to, or in response to your letter, okay?" Document 683 at 3. Put simply, there is not even a specific judicial finding that the drug quantity at issue was in fact 4.5 kilograms but only a determination that the exact quantity would not dictate the sentencing outcome. This is an extraordinarily flimsy reed to rest upon, and it simply does not bear the weight the government would ask it to.

In short, Mr. Thompson was convicted only of a 50-gram or more quantity in the sole count of conviction.  This is a "covered offense."  This Court should again apply the reasoning of <u>Allen</u> and "reject a reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago."  <u>Allen</u>, 2019 WL 1877072, at *4.  <u>See also</u> <u>United States v. Glore</u>, No. 99-CR-82 (PP), 2019 WL 1060838, at *5–6 (E.D. Wisc. Mar. 6, 209) (emphasis in original) (noting that the government's "argument that a defendant is not <u>eligible</u> because the sentencing court might have elected to calculate his statutory penalties in a way that now is unlawful, and back then would have been illogical, is unpersuasive.").

II.     <u>Section 404 grants this Court authority to impose a reduced sentence in accordance with current law and Guidelines.</u>

Section 404 of the First Step Act created an independent, freestanding remedy that authorizes the district court to impose a reduced sentence for a covered offense.  By its own terms, the Act allows the court to impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect

at the time the covered offense was committed.  The only limitations imposed by the Act are not implicated in Mr. Thompson's case.[1]  Therefore, the Court has the authority to impose a new sentence, in accordance with current law, in place of Mr. Thompson's current sentence.

> A.      *Section 404 is clearly distinct from 18 U.S.C. § 3582(c)(2).*

In arguing that Section 404 does not authorize a plenary resentencing, the government relies mainly on United States v. Potts, a decision from the Southern District of Florida.  (See ECF No. 72 at 11.)  The cases cited by the Potts court on this issue were all cases related to Section 3582(c)(2) and are therefore, inapplicable to the First Step Act.  Although several district courts in other jurisdictions have held that Section 404 does not authorize a plenary resentencing, those decisions are not well-reasoned and the law on this question is far from settled.

Section 3582(c)(2) permits courts to reduce a "term of imprisonment" based on a subsequently lowered Guidelines range, and only if such reduction is "consistent with" Commission policy statements.  One such policy statement provides that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing," and another requires courts to "substitute only" the guideline amendment and "leave all other guideline decisions unaffected."  See U.S.S.G. §§ 1B1.10(a)(3), (b)(1).   Because Section 3582(c)(2) requires courts to comply with the Commission's policy statements, the Supreme Court held in Dillon v. United States, 560 U.S. 817 (2010), that § 3582(c)(2) does not authorize a "resentencing proceeding."  Section 3582(c)(2) permits courts to reduce a sentence only "in circumstances specified by the Commission," id. at 825, and also

_____

[1] Section 404 provides only two narrow limitations on the Court's authority to impose a reduced sentence.  See Pub. L. No. 115-391, 132 Stat. 5194, § 404(c) (2018) (noting that "[n]o court shall entertain a motion made under this section to reduce a sentence" if (1) "the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or (2) "a previous motion made under [Section 404] was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.").

"constrain[s]" the courts' power through Commission "statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" Id. at 826.   The Court must follow § 1B1.10's instructions in determining "eligibility," in what circumstances it may reduce a sentence, and "the extent of the reduction authorized."  Id.

In contrast, Section 404 contains no reference to policy statements issued by the Sentencing Commission, and does not authorize the Commission to issue policy statements specifying in what circumstances or by what amount the Court may impose a reduced sentence.  Compare 28 U.S.C. § 994(u).  To the contrary, Congress directed courts to conduct a "complete review on the merits." See First Step Act, § 404(c).  Section 404 does not limit itself to a recalculation of a defendant's Guidelines range, nor would the new Guidelines range be mandatory even if it did.

The clear distinction between Section 404 and Section 3582(c)(2) was recently recognized by the District Court for the Southern District of Iowa in United States v. Dodd:

> The government's argument rests on a misplaced equivalency with sentence reductions under 18 U.S.C. § 3582(c)(2), a narrow avenue limited by the U.S. Sentencing Commission through 28 U.S.C. §§ 994(o) and 994(u) and U.S. Sentencing Guidelines § 1B1.10.  Such a reduction does not "impose a new sentence in the usual sense."  Dillon v. United States, 560 U.S. 817, 827, 130 S. Ct. 2683, 177 L.Ed.2d 271 (2010).  In contrast, section 404(b) of the First Step Act contains a broader grant of authority to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010" were in effect.

No. 3:03-CR-18, 2019 WL 1529516, at *2 (D. Iowa Apr. 9, 2019).

More to the point, the Court need not resolve whether this proceeding is a plenary resentencing or not.  The question is immaterial.  The relief sought by Mr. Thompson is equally compatible with a plenary resentencing or a discretionary grant of relief as envisioned by the government.

*B.*      *Rule 43(b)(4) does not apply to Section 404 proceedings.*

The government also argues that a hearing is "unneccessary," and that under Rule 43 of the Federal Rules of Criminal Procedure, the defendant need not be present at any hearing.  (ECF No. 796

at 17.)  Mr. Thompson leaves it up to the Court to determine whether or not a hearing is necessary in this case.  As noted in his initial memorandum, if the Court is prepared to impose a sentence of time served and reduce his term of supervised release, a hearing is not required. Given Mr. Thompson's imminent release date, the Court might consider immediately imposing a sentence of time served, and then scheduling a hearing to determine what supervised release term and fine (if any) would be appropriate in the light of the § 3553 factors as they stand today.

The government is incorrect, however, that Rule 43(b)(4) applies to Section 404 proceedings. Rule 43(b)(4), entitled "Sentence Correction," provides that a defendant "need not be present" when "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)."  This exception to the defendant's required presence at sentencing does <u>not</u> apply to statutes described by 18 U.S.C. § 3582(c)(1)(B).  <u>See</u>, <u>e.g.</u>, <u>United States v. Brown</u>, 879 F.3d 1231, 1237–41 (11th Cir. 2018) (§ 2255); <u>United States v. Arrous</u>, 320 F.3d 355, 357–60 (2d Cir. 2003) (direct appeal); <u>United States v. Faulks</u>, 201 F.3d 208, 210–12 (3d Cir. 2000) (same); <u>United States v. Moree</u>, 928 F.2d 654, 655–56 (5th Cir. 1991) (same).  It applies only to proceedings that are authorized by Section 3582(c) itself, that is, to "resentencing hearings conducted under" § 3582(c)(2) "as a result of retroactive changes to the Sentencing Guidelines by the United States Sentencing Commission," and § 3582(c)(1)(A) "as a result of a motion by the Bureau of Prisons to reduce a sentence based on 'extraordinary and compelling reasons.'"  Fed. R. Crim. P. 43, Advisory Committee Note (1998).  <u>See also</u> <u>Dodd</u>, 2019 WL 1529516, at *2 n.2 ("As section 404 of the First Step Act authorizes a reduction in sentence by its own terms, it would be effective even absent the existence of 18 U.S.C. § 3582(c)(1)(B) as complementary authority.").  The government's reliance on <u>Dillon v. United States</u> is similarly flawed.  <u>Dillon</u> is inapposite here, because it concerns

sentencing reductions under 18 U.S.C. § 3582(c)(2), which are completely different from—and more narrowly restricted than—proceedings under Section 404 of the First Step Act.

> ### D.      Congress intentionally granted the courts broad discretion.

Fundamentally, in enacting the First Step Act, Congress gave the courts the power to impose a reduced sentence to correct a historical wrong.[2]  It was a broad grant because Congress knew there would be complicated cases and wanted the courts to have discretion and flexibility to determine the appropriate remedy for defendants who were sentenced under laws that are now widely recognized as misguided, unjust, and racially motivated.  The government's attempt to hem in the Court misses the point.  Congress did not create a detailed, comprehensive system to implement their goal; rather, they handed a broad grant of authority to the courts.  This statute is not some technical correction or conforming change to the law; it is an attempt to right many years of injustice.

Mr. Thompson maintains that a full resentencing hearing is authorized, but is not necessarily required in his case.  Given that he has already served approximately 120 months (10 years), it would

---

[2] See, e.g., Executive Business Meeting of the S. Comm. on the Judiciary, 115th Cong. (Feb. 15, 2018) (statement of Sen. Mike Lee, Member, S. Comm. on the Judiciary, and one of the bill's primary sponsors), https://www.judiciary.senate.gov/meetings/02/15/2018/executive-business-meeting ("I see no good reason why we shouldn't make available the protections of the Fair Sentencing Act that were adopted a few years ago. If this was ok for prospective cases, why shouldn't it be ok in cases for which people have already been sentenced? . . . I think most Americans would acknowledge [they] have been punished excessively."); Press Release, Office of U.S. Sen. Corey Booker (co-author of First Step Act and chief sponsor in the U.S. Senate), Booker Statement on First Prisoner Released Due to First Step Act Reforms (Jan. 4, 2019), https://www.booker.senate.gov/?p=press_release&id=879 ("The sentencing provisions in the final bill include . . . making retroactive a 2010 law that reduced the egregious sentencing disparities between crack and powder cocaine – disparities that overwhelmingly and disproportionately affect African-Americans."); Press Release, Office of U.S. Rep. Hakeem Jeffries (co-author of First Step Act and chief sponsor in the U.S. House of Representatives), Collins-Jeffries Historic Criminal Justice Reform Bill Signed Into Law (Dec. 21, 2018), https://jeffries.house.gov/media-center/press-releases/collins-jeffries-historic-criminal-justice-reform-bill-signed-into-law ("[The Act] also provides retroactive relief for the shameful crack cocaine sentencing disparity that unfairly destroyed lives, families and communities.").

be entirely reasonable for the Court to decide to impose a sentence of time served, a 4-year term of supervised release upon concluding that further incarceration would be greater than necessary to serve the purposes of sentencing.  But it is hard to understand how it would be appropriate for the Court to deny relief, or to impose a specific sentence more severe than what the defendant seeks, without holding a hearing or considering all of the sentencing factors.  The First Step Act vests the district court with wide discretion.  In the absence of the authority to conduct a resentencing hearing, it is unclear how the Court would be able to fairly and properly exercise that discretion.

III.    Resentencing Mr. Thompson would not create "unwarranted disparities."

The government argues that granting relief to Mr. Thompson "would create unwarranted sentencing disparities among similarly situated offenders."  (ECF No. 796 at 12.)  The government has it backwards.  The purpose of the First Step Act is to give previous defendants the benefits of the Fair Sentencing Act that were enjoyed by those who came after them.  It is bizarre to portray this act of overdue mercy as an injury to those who were sentenced more recently.  Any person sentenced or resentenced for a crack cocaine offense today would get the same procedures.  See Order Appointing an Attorney and Setting Procedures for a Possible Sentence Reduction, United States v. Balcom, No. 4:02-CR-52-RH-CAS (N.D. Fla. Jan. 28, 2019), ECF No. 169 (concerning the need to avoid unwarranted sentencing disparities when resentencing a defendant under the First Step Act, "[w]hile the issue may not be free of doubt, the better view is that in these circumstances a court may properly consider the anticipated future treatment of offenders who commit similar offenses and have the similar criminal histories") (emphasis added).

Because federal sentencing law evolves and changes over time, disparities are inevitable between similarly situated defendants sentenced at different times, but not all disparities are automatically "unwarranted."  Ultimately, some disparities are warranted because "a court's duty is

always to sentence the defendant as he stands before the court on the day of sentencing." United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam) (quoted in Pepper, 562 U.S. at 492).

IV.   **Mr. Thompson deserves relief, and the § 3553(a) factors support a sentence of time served.**

In determining the appropriate sentence, this Court must take into consideration not only the offense conduct and the need for the sentence to reflect the seriousness of the offense, but also all of the other § 3553(a) factors, including Mr. Thompson's history and characteristics, the need to afford adequate deterrence, the need to protect the public from further crimes of the defendant, and the need for rehabilitation. The Court must then impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).

The government's memorandum acknowledges Mr. Thompson's positive accomplishments in prison. While incarcerated, Mr. Thompson has worked hard to develop the education and skills to succeed on the outside, and his rehabilitation indicates that he is unlikely to recidivate if released. Mr. Thompson worked his way down to the minimum-security satellite camp, completed the RDAP Program (where he continues to be a mentor), and has demonstrated himself a hard worker who can be trusted to comply with prison rules (and even to leave the prison facility) without supervision. At 45 years old, his risk of recidivism is virtually non-existent. Additional evidence of Mr. Thompson's rehabilitation and positive accomplishments would be presented to the Court at a resentencing hearing, or can be provided to the Court in additional briefing if the Court would like.

The Government contends that, notwithstanding what it acknowledges to be Mr. Thompson's "many achievements during his incarceration," Document 796 at 13, the Court should turn a blind eye to this substantial evidence of rehabilitation and recidivism risk reduction because the sentence in this case was imposed pursuant to a binding plea agreement the parties entered into at the time of

sentencing. The Government's argument does not defend the substantive reasonableness of a 168-month sentence, particularly by today's standards and in light of evolving insights both into crack cocaine generally and Mr. Thompson's character specifically. Instead, the Government points to the crass realities of plea negotiations as driven on both sides by considerations far removed from what a just sentence would be. Per its memo, "[i]n order to avoid a trial, the government accepted a sentence that was well below the bottom of the Guidelines range, and forwent the filing of a second offender information." Document 796 at 15. This reasoning tells the Court nothing about what a fair and just punishment is.

Judge Droney's acceptance of the plea agreement, moreover, was made in the shadow of the then-existing statutory and Guidelines framework governing crack cocaine sentencing. As Judge Dorsey specifically stated, the sentence imposed "does comply with the appropriate consideration of the guideline range as calculated." Document 683 at 8. The fundamental premise of the First Step Act is that old judgments about what was considered a fair and reasonable sentence in the context of deeply flawed Guidelines can and should be revisited.

As discussed in the *Johnson* decision (*United States v. Johnson*, No. 7:08-CR-0024, 2019 WL 1186857 (W.D. Va. Mar. 12, 2019)), in the face of an 11(c)(1)(C) disposition, a proportional sentence modification can be used to update a prior sentence to reflect updated understanding of where the "heartland" Guidelines sentence should be without disturbing the previously determined relationship of the sentence in a particular case relative to that heartland. Here the parties and Court previously agreed the sentence should fall well below the heartland of the then-understood Guidelines range. Our national understanding of where that heartland should fall has materially changed, and Congress has intentionally created a mechanism for updating sentences accordingly.

Here, moreover, Mr. Thompson's substantial post-conviction rehabilitation raises significant questions about whether a proportional sentence reduction would itself be—judged by what we now know—more than required to achieve the goals of sentencing. However, Mr. Thompson has now served a decade in prison. Even a modest proportional sentence reduction would thus make Mr. Thompson eligible for immediate release.[3]

CONCLUSION

Mr. Thompson is an African-American man who was sentenced under harsh crack-cocaine laws notorious for their disparate racial impact. He is now 45 years old, having served a decade in prison for a non-violent drug offense. The Court has a rare opportunity in this case: the opportunity to take a "second look"[4] at a sentence that may no longer be appropriate, in light of Mr. Thompson's history and characteristics, his impressive rehabilitation, and our current understandings about the powder-crack disparity, among other factors.

Respectfully, Mr. Thompson reiterates his request that the Court exercise its discretion to impose a sentence of time served and a supervised release term of four years or, in the alternative, to schedule a resentencing hearing to determine the appropriate sentence.

---

[3] The Government does not dispute that Mr. Thompson would be eligible for immediate release if subject to a 134-month sentence. The Government claims that this calculation should be done by the Bureau of Prisons but does not dispute that Defendant's calculation is in fact accurate.

[4] See Hon. Paul G. Gardephe, Federal Sentencing:  Time For A Second Look?, 43 AM. BAR ASS'N LITIG. J. 6 (June 1, 2017); Hon. Stefan R. Underhill, Did the Man I Sentenced to 18 Years Deserve It?, N.Y. TIMES, Jan. 23, 2016, at SR4, available at https://www.nytimes.com/2016/01/24/opinion/sunday/did-i-sentence-a-murderer-or-a-cooperative-witness.html.

Respectfully submitted,

THE DEFENDANT,
Aaron Thompson

OFFICE OF THE FEDERAL DEFENDER

Dated: June 18, 2019                    /s/ James Maguire
                                        James P. Maguire
                                        Assistant Federal Defender
                                        265 Church Street, Suite 702
                                        New Haven, CT 06510
                                        Bar No. ct29355
                                        Phone: 203-498-4200
                                        Fax: 203-498-4207
                                        Email: Allison_Near@fd.org


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 18, 2019, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

 /s/ James Maguire
James P. Maguire

14