UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Crim. No. 3:9-cr-111 (AWT) |
| v. | : | |
| | : | |
| AARON THOMPSON | : | |
| | : | |
| | : | |

**RULING ON MOTION FOR IMMEDIATE RELEASE OR RESENTENCING**

Defendant Aaron Thompson has moved for the court to order his immediate release or, in the alternative, to schedule a resentencing hearing, pursuant to the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018), § 404. For the reasons set forth below, the defendant's First Step Act Motion for Immediate Release or Resentencing is being denied except with respect to his request that the length of his term of supervised release be reduced.

**I.    Background**

On November 10, 2009, the defendant pled guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.  At that time the applicable statutory penalties included imprisonment for a mandatory minimum of ten years to life, a supervised release term of five years to life and a fine in the amount of up to four million dollars.

At the time the defendant entered his guilty plea, the parties entered into a binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C).  The plea agreement provided, among other things, that

> The defendant and the Government agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that a sentence of 168 months of incarceration is a reasonable and appropriate sentence, which is sufficient, but not greater than necessary, to achieve the purposes of sentencing in light of the factors set forth under 18 U.S.C. § 3553(a).  The defendant and the Government agree that under the circumstances of this case, the defendant could otherwise be subjected to more severe penalties, including: (1) a twenty-year mandatory minimum term of imprisonment based upon the filing of a § 851 Information, and (2) a guideline range of 360 months to life imprisonment . . . .

Plea Agreement (ECF No. 171) at 5 of 10.  The plea agreement also reflected that the government had agreed not to file a Second Offender Notice under 21 U.S.C. § 851, "which may have subjected the defendant to, among other things, a mandatory minimum term of incarceration of 240 months under 21 U.S.C. § 841(b)(1)(A)."  Id.  "In consideration for this agreement, the defendant expressly agree[d] that, regardless of the applicable guideline range in this case, he will not seek a sentence below 168 months of incarceration."  Id.

The defendant was sentenced by Judge Dorsey on June 10, 2010.  At sentencing the court determined that the total offense level was 39, that the defendant's criminal history category was VI, and that the resulting guideline range included a term of imprisonment in the range of 360 months to life, an eight-year term of supervised release, and a fine in the range of $25,000 to $4,000,000.  The Statement of Reasons explained that "[t]he Court imposed a sentence outside the advisory guideline system pursuant to . . . Rule 11(c)(1)(C), in that the parties entered into a binding plea agreement which called for a sentence of 168 months' imprisonment, a figure below the applicable guideline range."

## II.    Discussion

The parties disagree about whether the defendant is eligible for relief under the First Step Act, specifically whether the defendant's offense of conviction is a "covered offense", as defined in section 404(a).

The court concludes that the defendant's offense of conviction is a covered offense because it was a crack cocaine offense affected by the Fair Sentencing Act.  "Under the plain language of [section 404], whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. . . . [I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."  U.S. v. Allen, 384 F. Supp. 3d 238, 241 (D. Conn. 2019) (internal quotations, bracketed language and citations omitted).

> For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a "covered offense." First Step Act § 404(b). A "covered offense" is one for which the Fair Sentencing Act modified the penalties, which includes any crack cocaine offense under Section 841(b)(1)(A) or (B). "Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.' " United States v. Davis, No. 07-CR-245S, 2019 WL 1054554, at *3 (W.D.N.Y. Mar. 6, 2019) (internal citations to Section 404 omitted). Quantity is simply not part of the statutory test for eligibility under the First Step Act. Eligibility turns entirely on the categorical nature of the prior conviction. All other issues, including the proper quantity determination, are a part of a reviewing court's discretionary call on whether to modify an eligible defendant's sentence.

United States v. Boulding, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019).

> Also, as explained in United States v. Askins,

> The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 ..., that was committed before August 3, 2010." § 404(a), 132 Stat. at 5222. This definition necessarily tethers covered offenses to statutes, not to the underlying conduct for which an individual defendant was sentenced. See id. This is made most apparent by the definition's second clause, which contemplates the Fair Sentencing Act's modification of "statutory penalties for [a Federal criminal statute]"—in Defendant's case, the statutory (as opposed to Guidelines-recommended) penalties for violating 21 U.S.C. § 841.

3

United States v. Askins, No. CR0200645001PHXSRB, 2019 WL 3800227, at *3.

The parties also disagree about whether a plenary resentencing is required.  On this point

the court finds persuasive the analysis in Boulding:

> The process for determining whether an eligible defendant should receive a reduced
> sentence, and what any reduction should be, is not a plenary resentencing. The statute
> emphasizes that any reduction in sentence is in the reviewing court's discretion. If a court
> is not compelled to resentence an eligible defendant, it makes little sense for a court to be
> required to hold a plenary hearing if the court does decide to act. Furthermore, the statute
> only authorizes a "reduced sentence." First Step Act § 404(b). This limited authorization
> is inconsistent with a plenary resentencing. Rather it is consistent with the removal of a
> pre-existing barrier to the retroactive reach of the Fair Sentencing Act to defendants like
> Defendant Boulding who were sentenced before the effective date of that act.[]

> But unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step
> Act does not impose any artificial or guideline limits on a reviewing court. These earlier
> rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on
> Sentencing Commission guideline reductions, and were therefore subject to the limitations
> built into that section. The First Step Act is different. The Sentencing Commission has
> nothing to do with it. Rather, Congress has directly authorized the possible reduction under
> 18 U.S.C. § 3582(c)(1)(B). Under that section a "court may modify an imposed term of
> imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the
> Federal Rules of Criminal Procedure." Id. Because the First Step Act expressly permits
> courts to modify a term of imprisonment, the First Step Act serves as the basis for relief
> under Section 3582(c)(1)(B). See United States v. Kamber, No. 09-cr-40050, 2019 WL
> 399935, at *2 (S.D. Ill. Jan. 31, 2019) (applying Section 3582(c)(1)(B) to First Step Act
> motion but concluding the defendant was not entitled to relief because he was not convicted
> of a covered offense). The limits of 18 U.S.C. § 3582(c)(2) are inapplicable. The only limits
> found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new
> thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do
> not limit the Court's discretion as they did in earlier rounds under 18 U.S.C. § 3582(c)(2).

> This means, among other things, that defendants who scored under guidelines as career
> offenders and were therefore ineligible for relief in earlier rounds now have an opportunity
> to obtain relief under the First Step Act even though their technical guideline range remains
> unaffected. The government's view would not permit this and would thereby preclude relief
> for a significant group of defendants that were thought to be beneficiaries of the First Step
> Act. See United States v. Tucker, 356 F.Supp.3d 808 (S.D. Iowa Jan. 23, 2019) *654
> (noting the First Step Act was enacted "in an effort to remedy the disproportionately harsh
> sentences imposed for crack cocaine offenses" and reducing sentence of career offender);
> Jon Schuppe, Kim Cornett and Michelle Cho, "I Refused to be Bitter or Angry": Matthew
> Charles, Released from Prison and Sent Back Again, Begins Life as a Free Man,
> NBCnews.com, Jan. 8, 2019, https://www.nbcnews.com/news/us-news/i-refuse-be-bitter-

or-angry-matthew-charles-released-prison-n955796 (noting the First Step Act applied to case of career offender garnering national attention).

United States v. Boulding, 379 F. Supp. 3d 646, 653-54 (W.D. Mich. 2019).  See also United States v. Askins, No. CR0200645001PHXSRB, 2019 WL 3800227, at *7 ("The Court will . . . decide whether to reduce Defendant's sentence by considering not only his nearly identical Guidelines range as a career offender, but also the revised statutory range under the Fair Sentencing Act, the 18 U.S.C. § 3553(a) factors, and any amendments to the Guidelines range for the underlying crack offense. See Boulding, 379 F. Supp. 3d at 654; United States v. Shelton, No. 3:07-329 (CMC), 2019 WL 1598921, at *2 (D.S.C. Apr. 15, 2019)").

Here, as noted above, the defendant's guideline range at the time of sentencing included a term of imprisonment in the range of 360 months to life and an eight-year term of supervised release, based on a total offense level of 39 and the fact that he was in Criminal History Category VI.  As also noted above, because the government agreed not to file a Second Offender Notice, the mandatory minimum term of imprisonment was ten years.  Under the November 1, 2018 sentencing guidelines manual, the currently applicable advisory guideline calculation would include in a term of imprisonment in the range of 292 to 365 months, based on a total offense level of 35 and Criminal History Category VI; while the defendant would remain a career offender, the drug guideline computation would continue to be used because the career offender computation would continue to result in a lower adjusted offense level.  Also, if the advisory guideline computation for powder cocaine were used pursuant to Kimbrough v. United States, 552 U.S. 85 (2007), the resulting advisory guideline range would be a term of imprisonment in the range of 235 to 293 months.

Based on the forgoing, the court agrees with the government that the defendant's term of imprisonment should not be reduced because "he already received the significant benefit of a

guaranteed below-Guidelines sentence by virtue of the binding plea agreement." Gov't Opp'n (ECF No. 796) at 14 of 19.  The sentence of 168 months is 124 months below the bottom of the new advisory range for crack cocaine and 67 months below the bottom of the new advisory range based on powder cocaine.  Also, at sentencing Judge Dorsey found that the sentence "meets the requirements of 3553(a)."  6/10/10 Tr. (ECF No. 683) at 8.

> So, on that basis, I find that the sentence is reasonably sufficient to accomplish those purposes and is an appropriate disposition of the case, having in mind the factual situation that's – that is presented as far as Mr. Thompson's conduct is concerned.

Id.  The court now reaches the same conclusion.  The basis for the court's conclusion includes its familiarity with this case prior to the submission of the instant motion.  While most of the 16 defendants were sentenced by Judge Dorsey, co-defendants Shurika Rosado-Thompson and Raul Fabian were sentenced by the undersigned, and co-defendant Quenida Andeliz was convicted after a jury trial presided over by, and was sentenced by, the undersigned.  In the course of preparing for and presiding over those three sentencings, the undersigned reviewed the offense conduct of and sentences imposed upon all of the defendants in the case, including Aaron Thompson, to assess their relative culpability, and the court felt that the sentence of, inter alia, 168 months of imprisonment was an appropriate disposition with respect to defendant Thompson and that he had received a significant benefit under the binding plea agreement.

The defendant also requests that the court reduce his term of supervised release from five years to four years.  The court concludes that such a reduction is appropriate.  Unlike the agreed-upon 168 months of incarceration, the plea agreement does not contain any agreement with respect to the length of the term of supervised release.  Rather, the guideline term of supervised release was eight years, and the defendant waived his right to appeal or collaterally attack the supervised release part of the sentence if the term did not exceed five years.  See Plea Agreement

at 6 of 10.  Because the mandatory minimum term of supervised release was five years, a five-year term was the shortest term that could have been used for purposes of the appellate waiver, and the parties could not have agreed to a shorter term of supervised release even if they had wanted to.  Thus there is no way to tell if the principal factor that lead to the defendant receiving a five-year term of supervised release was a consensus that he should receive a five-year term per se, as opposed to a consensus that he should receive the mandatory minimum term.

Under 18 U.S.C. § 3583(c), "in determining the length of the term and the conditions of supervised release, [the court] shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C.A. § 3583(c).  Thus "[t]hat section requires the district court to consider almost all of the § 3553(a) factors, but specifically does not require the district court to consider the factors listed in § 3553(a)(2)(A), all of which go to the seriousness of the defendant's offense."  United States v. Burden, 860 F.3d 45, 56 (2d Cir. 2017).

> Congress's omission of this set of factors accords with the purposes of supervised release. "Supervised release ... is not a punishment in lieu of incarceration." United States v. Granderson, 511 U.S. 39, 50, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). To the contrary, "Congress intended supervised release to assist individuals in their transition to community life." United States v. Johnson, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). Accordingly, "[s]upervised release fulfills rehabilitative ends, distinct from those served by incarceration." Id.

Id.

Prior to his arrest for the offense of conviction, the defendant had a solid record of employment.  The last job was in construction, and he was a member of a union.  While incarcerated, the defendant completed the 500-hour Residential Drug Abuse Program and is now a mentor to other inmates.  In addition, he has completed a significant number of other training programs, including some that are particularly relevant to the construction industry.  The

defendant currently works as a building maintenance worker at the minimum-security camp at FMC Devens.  He is trusted to work not only within the walls of the prison facility but also around the larger complex, including at a warehouse several miles from the facility.  He has received furloughs for authorized leaves on multiple occasions.

Based on the defendant's history and the noteworthy steps he has taken towards rehabilitation while incarcerated, the court concludes that the mandatory minimum four-year term of supervised release will better serve the defendant in transitioning to community life than would a five-year term.  It is most likely that the defendant will have met any goals set for him during his period of supervised release by the end of the fourth year and that, as a result, the only meaningful thing accomplished by a fifth year would be an additional year of restrictions on his liberty.

## III.    Conclusion

For the reasons set forth above, the defendant's First Step Act Motion for Immediate Release or Resentencing (ECF No. [793]) is hereby GRANTED in part and DENIED in part.  The request to reduce the defendant's term of imprisonment is denied and the request to reduce his five-year term of supervised release to a four-year term is granted.

It is so ordered.

Signed this 18th day of October 2019 at Hartford, Connecticut.


_____/s/AWT_____
Alvin W. Thompson
United States District Judge